IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATIONAL MOTOSPORT ASSOCIATION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-12-113-L |
| ABC RACE ASSOCIATION, INC., an Oklahoma corporation; RPM, LLC, an Alabama limited liability company, d/b/a RPM SPORTS and d/b/a RACE PROMOTIONS MANAGEMENT; TOM FENDER, an individual; GARY MILES, an individual; WILLIAM STUEVER, an individual; TOM BURG, an individual; BLAKE CONNELLY, an individual; BRET SMITH, an individual; WINSTON LINDSAY, an individual; BEN EVANS, an individual; JAY FERGUSON, an individual; and ROGER HALL, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **O R D E R**

This matter is before the court on the Motion for Summary Judgment filed by defendant RPM, LLC, d/b/a RPM Sports and d/b/a Race Promotions Management ("RPM") **[Doc. No. 91]**. Plaintiff National Motosport Association, Inc.

("NMA") responded to RPM's motion and RPM filed its reply brief in support of summary judgment.[1]

Summary judgment is appropriate when the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a) ("[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts

---

[1] Defendant ABC Race Association, Inc. ("ABC") and the individual defendants have also filed a Motion for Summary Judgment [Doc. No. 88], which is addressed in a separate order.

considered undisputed – show that the movant is entitled to it[.]"). The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. Allegations alone will not defeat summary judgment. Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988). The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. Allegations alone will not defeat summary judgment. Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

In its response brief, NMA has advised the court that as a result of NMA's Voluntary Stipulation of Dismissal of Certain Claims Against Defendant RPM, LLC [Doc. No. 94] the court need not rule on certain summary judgment arguments made by RPM since several claims against it have been dismissed. The

dismissed claims are NMA's claims against RPM for: Trademark Infringement; Trademark Dilution/Cybersquatting; Conversion; and Civil Conspiracy (only to the extent of Trademark Infringement, Trademark Dilution/Cybersquatting and Conversion).  Thus, the identified dismissed claims are moot and need not be addressed further in this order.  The court now turns to a consideration of whether summary judgment is appropriate on NMA's remaining claims against RPM, namely, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, and Civil Conspiracy.

The cause of action for tortious interference with a contractual or business relationship has four elements that must be proved by the plaintiff: (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; and (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage.  Eureka Water Company v. Nestle Waters North America, Inc., 690 F.3d 1139, 1154 (10th Cir. 2012) *citing* Wilspec Techs., Inc. v. DunAn Holding Grp Co., Ltd., 204 P.3d 69, 74 (Okla. 2009).   The essential elements of actionable Civil Conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  Schovanec v. Archdiocese of Okla. City., 188 P. 3d 158, 175 (Okla. 2008).

The court has carefully reviewed the briefs and exhibits submitted by the parties. Based on this review, it appears that summary judgment should be granted in favor of RPM on all of NMA's remaining claims. The court finds that NMA has failed to overcome the convincing presentation by RPM which demonstrates summary judgment should be granted in favor of RPM on NMA's claims as a matter of law.

The following background facts are taken from RPM's Statement of Undisputed Material Facts (Doc. No. 91, pp. 9-17[2], ¶¶ 1-50) and are undisputed. RPM promotes and manages major motocross sports events in the United States. Doc. No. 91, ¶ 2. ABC is a non-profit corporation, formed by the Ponca City Chapter of National AMBUCS, Inc. ("Ponca City AMBUCS") to provide facilities and secure promoters and organizers for Ponca City motocross racing events, one of which is conducted each summer (referred to herein as the "Ponca City Race"). Id., ¶ 3. NMA is an organization whose members compete in motocross events sponsored by NMA itself and by other promoters. Its members compete for NMA "points" to qualify for an annual NMA championship race. Id., ¶ 4. Some NMA members also compete in events sponsored by the American Motorcyclist Association ("AMA"). The AMA members also compete for "points" to qualify for an annual AMA championship race. Id., ¶ 5.

---

[2] Page numbering as shown in court's Electronic Case Filing ("ECF") caption.

For over thirty years, ABC or AMBUCS contracted with NMA to promote and organize the summer Ponca City Race at the same track in Ponca City. Id., ¶ 6. The event became a major race for motocross competition. Id. NMA had a contract with ABC to run the Ponca City Race during 2011-2013. Id., ¶ 7. It is not disputed by NMA that after the July 2011 Ponca City Race, Allen McWilliams, Manager of RPM, heard through the motocross industry "grapevine" that ABC was considering making a change of promoter for its 2014 Ponca City Race. Id., ¶ 13. It is not disputed by NMA that in September 2011, RPM telephoned defendant Tom Burg and expressed that RPM was ready, willing, and able to put its "name in the hat" should Ponca City look for a new promoter after the NMA contract expired. Id., ¶ 14.

RPM has submitted several other significant and undisputed facts which it claims support summary judgment in its favor in this matter. Although NMA has attempted to dispute some of RPM's facts, the court finds that NMA's attempt to raise a genuine issue of fact is superficial, and its view of the facts is not actually supported by the evidentiary material relied on by NMA. NMA uses carefully chosen quotes from exhibits out of context and superimposes them, in a result-oriented way, over RPM's eventual status as promoter of the Ponca City Race in 2012 in an attempt to show that RPM acted in an unlawful manner to interfere with the existing contract between NMA and ABC and with NMA's prospective

economic advantage. NMA's chronology, to the extent it seeks to impose liability on RPM, is conjectural and lacking in evidentiary support. The court finds that NMA's summary judgment response is too speculative to support the denial of summary judgment to RPM under the undisputed facts and the reasonable inferences to be drawn from them.

The court notes that NMA's summary judgment response brief starts with approximately 10 pages of its own "Background of the Case" before it even begins its response to RPM's statement of undisputed material facts. The court has carefully reviewed the actual evidence underlying NMA's "background" facts, as well as the evidence cited by NMA in its effort to dispute RPM's facts, and ultimately concludes that the evidence is insufficient to raise a genuine issue of material fact on NMA's claims against RPM.

RPM argues that it should be granted summary judgment on NMA's claim of tortious interference with NMA's contractual rights because: (1) there was no valid, enforceable contract at the time that ABC and RPM first discussed a potential contract for RPM to promote the 2012 Ponca City Race; (2) even if plaintiff could show evidence of discussions between ABC and RPM regarding promotion of the 2012 Ponca City Race before the contract between ABC and NMA was terminated, NMA has insufficient evidence to show that RPM induced or caused ABC to terminate its contract with NMA; and (3) NMA has failed to show malice or

7

bad faith on the part of RPM and RPM's conduct in regard to conversations concerning the 2012 Ponca City Race should be considered legitimate business activity.

NMA argues that a reasonable jury could conclude that RPM intentionally interfered with NMA's contract with ABC for 2012 and 2013. NMA argues that RPM and ABC planned to cancel NMA's contract with ABC so that RPM could "take over" the Ponca City Race.

The court agrees with RPM that, even assuming (for purposes of RPM's summary judgment motion only) the existence of a valid contract between NMA and ABC during the relevant period, there is insufficient evidence to show that RPM improperly or maliciously induced or caused ABC to terminate its contract with NMA.

The court finds that the September 22, 2011 letter from RPM to the Ponca City AMBUCS and the October 1, 2011 letter from RPM to ABC Race Board Chairman Tom Burg do not support NMA's claims that RPM intentionally interfered with NMA's existing contract with ABC to promote the Ponca City Grand National Championship race for the period 2011-2013. NMA alleges that RPM essentially "took over" the race for 2012 and 2013 and was responsible for AMA-sanctioned races being run at the track. NMA claims that the letters show that RPM "induced" ABC to terminate the existing contract by enticing ABC with

8

greater revenues and by convincing ABC to resolve the "current promotional situation" (*i.e.,* ABC's existing contract with NMA) within 30 days of RPM's October 1, 2011 letter.  According to NMA, ABC terminated the contract on October 24, 2011 at RPM's urging and in accordance with an alleged plan between RPM and ABC.

The very same letters relied on by NMA in support of its claims against RPM also contain other undisputed portions, not discussed by NMA, which significantly weaken any <u>reasonable</u> inference of malice or an improper purpose as a matter of law.  The court agrees with RPM that even the excerpts relied on by NMA are insufficient to raise a jury question regarding the requirement of malice. The court concludes that NMA has failed to come forward with sufficient evidence of malicious or wrongful interference on the part of RPM to justify a jury trial. When the undisputed communications and deposition testimony are considered in their entirety, NMA's speculative claims of a reasonable inference of tortious conduct by RPM become even weaker.  To highlight this point, the court sets forth the full text of each letter below:

September 22, 2010[3]

Gentlemen,

---

[3]   Although this letter is dated "September 22, 2010" it has been established by many witnesses, including Mr. McWilliams himself, that the letter was actually sent September 22, 2011.  *See* references following Doc. No. 91, RPM's Statement of Undisputed Facts, ¶ 15.

>RPM, LLC is a professional promotional and management company and have been in the business since 1986. We will be providing to you a full professional staff that will make it a pleasure to be associated with. Our contacts and relationships will open doors to grow this great event that you have nurtured for the past 34 years.
>
>We understand that the situation you are faced with is a very difficult one. Please let us know what we may do to provide you with any guidance or ideas that may be of assistance in helping you move forward with RPM Sports.
>
>Once we finalize the enclosed agreement, we would greatly appreciate proposing several other events that we can bring to your facility and negotiate an agreement for your organization. This will enable the AMBUCS to make additional income to put toward your awesome organization.
>
>We thank you again, and please feel free to call after you have reviewed the agreement. If you need to contact us please call Allen's cell phone, as we will be out of town promoting an event this weekend.
>
>Respectfully submitted,
>Allen and Jamie McWilliams

Doc. No. 91, Exhibit 12.

The September 22, 2011 letter was accompanied by an "Agreement for Partnership Services by and between RPM, LLC and Ponca City AMBUCS to produce and perform The Ponca City Motocross Championship." Id. This Agreement includes certain terms relating to the performance of duties, fees, financial obligations and payment terms, and responsibility for payment of certain

listed race-related expenses.  The Agreement concludes with the following paragraph:

> It is understood that the AMBUCS desire to replace the current management.  RPM, LLC is very flexible in making a smooth transition.  Should an alternative agreement need to be resolved for the upcoming year, RPM, LLC shall work with the AMBUCS as necessary to administer and perform as successful event as possible.

NMA attempts to make much of the fact that the September 22, 2011 letter and accompanying Agreement do not include the date "2014."  As noted by RPM, the Agreement states, "Should an alternative arrangement need to be resolved for the upcoming year, RPM, LLC shall work with the AMBUCS as necessary to administer and perform as successful event as possible."  The court agrees that if the Agreement was meant to apply to 2012, as NMA asserts, then an "alternative arrangement" would not be needed for 2012.  NMA has failed to come forward with sufficient evidence to raise a jury question regarding Allen McWilliams' deposition testimony that the proposed Agreement was put together from other contracts RPM already had, and was sent to ABC "for their review, input or rejection, whatever they decided to do with it."  Deposition of Allen McWilliams, Doc. No. 98, Exhibit 1, p. 90, lines 14-19.

The text of RPM's second letter to ABC is set forth below:

October 1, 2011
TO: Tom
FROM: Allen

RE: Ponca City

Dear Tom,

First and foremost, we want to thank you for the opportunity you and the AMBUCS have given Jamie, Alex, myself and our company to be a part of reviving championship motocross racing in Ponca City. Our forward thinking, unlimited contacts, creative marketing and refusal to back down in tough situations, has made our company rise to the top, where we are second to none. Keeping this in mind, I present to you and the AMBUCS the following request. I have to be in Ohio next Thursday for the AMA Congress meeting for which I am an AMA Congressman. (by the way I forgot to tell you that our organization was nominated AMA Promoter of the Year in 2008). My goal would be to eventually bring AMA events to Ponca, provided you and the AMBUCS agree; however, I need to start laying the ground work now, even if it is not until 2014. We have the ability to put Ponca in the Loretta Lynn qualifying program, which would bring business and tax dollars to Ponca in the spring of the year. We will also be able to hold a Pro/Am event and possibly an ATV Nationals. The ATV event could possibly be a stretch, because ATV racing has taken the biggest hit economically. Regardless, we are ready willing and able to bring multiple events to Ponca if you and the AMBUCS so desire.

If I understood you correctly the other night, you agreed we would be given the contract to run the facility events at least by 2014. Because of the sensitivity and confidentiality of this matter, I would need to get this signed before I would discuss the strategy with the powers to be. During this particular meeting, it is possible we could even arrange something for 2012 and 2013 in the event we took over prior to 2014. Of course, none of this would be public information, until all issues were resolved, and all concerned agreed to mutually release any information. In order to get anything for 2012, there is only a short window of opportunity left to pull the trigger. I could possibly get a 30 day extension, before we would have to pass if there was no resolution with the current promotional situation, in the next 30 days.

12

> **In closing, please understand we are in no way trying to push any decision on you or the AMBUCS; we are simply letting you know your options. To reiterate, none of us are obligated to become involved with the AMA; however, by doing so many more doors would be open for increased revenue and events through industry, sponsors and riders.**
>
> Thanks again and we look forward to working with you.
>
> Respectfully submitted,
>
> Allen McWilliams
> RPM Sports

Doc. No. 91, Exhibit 15 (emphasis added).

Other than its own speculation, NMA has failed to show that the letters are evidence of intentional tortious interference with the contract between ABC and NMA. Furthermore, even if it is assumed that the communications pertained to the 2012 race, NMA has failed to come forward with evidence, other than its own speculation and argument, that RPM's letters caused or convinced ABC to terminate its existing contract with NMA. Although the letters show RPM's interest in eventually becoming the promoter of the Ponca City Race, the court finds that the letters do not raise a reasonable inference of malice or an attempt to improperly entice ABC to terminate its contract.

NMA's response brief states that ABC summed up its view of forcing NMA out (allegedly in accordance with a plan between ABC and RPM) by declaring

"<u>mission accomplished.</u>" Doc. No. 98, p. 5 (emphasis added by NMA, *citing* Exhibit 2). Exhibit 2, however, is a forwarded e-mail message apparently authored by William Stuever on December 8, 2011 to Tom Fender, Tom Burg, Winston Lindsay, Blake Connelly, Gary Miles and Roger Hall. There is no indication in Exhibit 2 that the e-mail message was ever sent to or received by RPM. After stating "[i]t is mission accomplished, Ron [Henrickson] has agreed to severe [sic] ties with the Ambucs and move on[,]" the e-mail concludes by stating: "We are free to move on securing a new promoter/or promoters. A race board meeting needs to happen next week to start a promoter search and draft a press release." Clearly, Exhibit 2 is not evidence that RPM was involved in a plan with ABC to "accomplish the mission" of terminating ABC's contract with NMA. The undisputed language of Exhibit 2 indicates that a promoter had not been chosen as of December 8, 2011. The court agrees with RPM that NMA has generally attempted to attribute certain actions of ABC and the individual defendants and assign them to RPM, with no evidentiary basis for doing so.

Similarly, the court agrees with RPM that NMA's response brief fails to identify evidence sufficient to support an inference that RPM knew of any specific financial details of NMA's contract with ABC. Thus, NMA's bare allegations that RPM appealed to ABC's desire for more money and that this should be taken as evidence of unlawful interference are simply unsupported by the summary

judgment record. Further, the summary judgment evidence is insufficient to raise a genuine issue concerning how RPM's proposals to NMA during the relevant time period could be said to be anything other than legitimate business activity. Summary Judgment should be granted on NMA's tortious interference with contract claim.

Summary Judgment is also appropriate on NMA's claim that RPM interfered with NMA's prospective business relations. NMA has failed to show interference, inducement and malice apart from lawful competition and business practices. Once again, NMA's response brief on this issue focuses on activities of ABC in an attempt to raise an inference of wrongful conduct on the part of RPM. For instance, in its response, NMA asserts that "ABC created a mailing list using NMA's forms" and that "ABC neither requested nor received, NMA's permission to use the forms." Doc. No. 98, p. 30. There is no indication that RPM knew the origin of the list or had any reason to think it could not lawfully use the list once it had been chosen by ABC to promote the 2012 race.

The undisputed summary judgment evidence does not support a reasonable inference that RPM intentionally and without justification targeted NMA's racers and sponsors. The record indicates that RPM put on a competing 2012 race in Ponca City at the same time NMA scheduled its race in Norman. NMA states that "RPM scheduled its competing Ponca City races at the traditional

time as the Grand Nationals because it knew NMA's racers and sponsors were accustomed to going to Ponca City in late July and RPM wanted to continue that tradition[.]" Doc. No. 98, p. 29.  NMA argues that a reasonable jury could conclude from the evidence that RPM specifically targeted NMA's racers and sponsors *to harm NMA*.  However, a review of the undisputed evidence shows that RPM's actions are just as consistent with a lawful purpose, namely that RPM wanted to continue the Ponca City race at the traditional time period.  NMA has failed to come forward with any non-speculative evidence to show that RPM's actions rise to the level of Tortious Interference with Prospective Advantage.

In light of the court's rulings that plaintiff has presented insufficient evidence at the summary judgment stage that RPM tortiously interfered with NMA's contractual or prospective economic advantage, and in the absence of sufficient evidence of malicious or wrongful conduct, the court finds that summary judgment should be granted as a matter of law on NMA's claim against RPM for civil conspiracy as well.

Although the court need not mention each aspect of the parties' view of the evidence, the court finds that the undisputed summary judgment evidence discussed in this order serves to demonstrate that NMA's arguments against summary judgment in favor of RPM are not grounded on the facts, but rather on speculation, allegations, or suspicions.  NMA is asking the court to speculate that

RPM's actions were taken maliciously and/or with an improper or unlawful purpose.  However, the undisputed facts demonstrate that RPM's actions are consistent with a lawful purpose.  While the court is required at the summary judgment stage to view the facts and reasonable inferences that may be drawn from those facts in the light most favorable to NMA, the court is not aware of any authority that would require it to engage in speculation favorable to NMA.  It is NMA's burden at the summary judgment stage to set forth specific facts showing that there is a genuine issue for trial.  Since NMA has failed to do so, summary judgment in favor of RPM is appropriate.

Accordingly, for the reasons stated above, RPM's Motion for Summary Judgment **[Doc. No. 91]** is **GRANTED** on all of NMA's remaining claims against RPM.  This ruling will be incorporated in a final separate Judgment at the appropriate time.

It is so ordered this 24th day of January, 2013.

_Tim Leonard_
TIM LEONARD
United States District Judge